Ronald WRIGHT, Plaintiff,

v.

UNITED STATES, Defendant.

In the United States Claims Court.

May 8, 1990.

Ronald Wright, pro se.

MARIAN BLANK HORN, Judge.

## ORDER

On April 16, 1990, Ronald Wright, currently incarcerated in the United States Penitentiary, at Leavenworth, Kansas, filed a *pro se* "Complaint for Violation of U.S. Constitutional Rights", in the United States Claims Court, together with an application to proceed *in forma pauperis*. Plaintiff's Complaint, as written, presents a confused factual pattern, which makes it difficult for the court to determine precisely what has occurred and against which party the plaintiff seeks redress.[1] Based upon the facts as presented by the plaintiff, viewed in a light most favorable to the plaintiff, as well

as upon the relevant, legal precedent, it is the finding of this court that the plaintiff has failed to present a cause of action over which this court has jurisdiction. The court, therefore, Orders that the plaintiff's Complaint be dismissed.

## FACTS

The following facts, as best as the court can determine from the Complaint, comprise the foundation upon which the plaintiff attempts to base his claims of constitutional rights violations. The alleged constitutional violations seem to emanate from the events associated with the plaintiff's arrest and plea, as he characterizes it, to "construing and mailing threatening letters."

According to the Complaint, plaintiff wrote the letters while incarcerated at the State of Tennessee Maximum Security Penitentiary. Subsequently, on August 9, 1988, plaintiff was arrested by a United States Secret Service Special Agent. Plaintiff's Complaint states that at the time of his arrest, the special agent informed him of his Miranda rights, and he requested that an attorney be appointed to represent him. He claims that an attorney was appointed, but not until after his indictment on September 8, 1988, and after what he alleges was his initial court appearance on September 26, 1988. Plaintiff also indicated that he had informed the special agent that he was writing the letters because the correctional officers were beating him for racial reasons and threatened to kill him upon his release.

As described by the plaintiff, the sentence for which he was originally incarcerated ended on December 12, 1988. On November 7, 1988, however, he alleges that a federal detainer was served, which was officially filed with the commissioner's office on November 9, 1988. Consequently, according to the plaintiff, on December 8, 1988, the United States Marshall resumed

---

1. The court has devoted considerable effort to deciphering plaintiff's fourteen page, handwritten, at times difficult to read, and at times confusing, complaint, which is interspersed with numerous, inappropriate latin phrases. Nonetheless, all the factual allegations, to which references are made in this Order, are taken from the plaintiff's complaint.

custody and care of him, allegedly in violation of his constitutional rights.

Apparently, plaintiff appeared in court on April 4, 1989 on the charges that form the basis of this action. At that time, plaintiff claims he requested, but was denied new counsel, and the court accepted plaintiff's plea. The plaintiff, however, contends that the judge failed to inform him of the constitutional rights which he was waiving by entering a plea. According to the plaintiff, as a result, he has served the last 16 months in custody, in violation of his constitutional rights.

In addition to the factual allegations, presented by the plaintiff, the following arguments are presented by him for the court's review:

The government's attorney was openly prejudiced against plaintiff when he, stated that accused was to remain in federal jurisdiction when in actuality he was consenting the fact that the federal government actually did not possess jurisdiction. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 cites omitted.

The Honorable Court did not issue its plaintiff's right to equal protection of the law when it accepted the prosecutions statement stated in above # 8 and did not correct the matter at law.

The Honorable Court did not issue its plaintiff's right to due process of the law when it accepted the government's statement as set out in above # 8 and did not correct the matter at law.

The Honorable Court did not issue its plaintiff's rights against cruel and unusual punishment infliction when it sentenced plaintiff based upon the plea agreement offered by the prosecution. The District Court was openly prejudiced against plaintiff when it discloses in court records that the Honorable Thomas G. Hull stated to plaintiff, "you are going to prison!"

The District Court publicly humiliated plaintiff when it released to the Knoxville New News Sentinel that plaintiff received 30 months for count 1 of the 7 count indictment that was dismissed as part of the Unconstitutional plea. This information was printed on April 5, 1989 in their morning edition. This is cruel and unusual punishment.

The District Court did not issue its plaintiff's rights to bail to this plaintiff for a non-violent, non-capitol offense that it technically did not possess jurisdiction to prosecute by publication of the U.S.A. government itself. This was infliction of cruel and unusual punishment.

Additionally, plaintiff's Complaint appears to suggest that efforts by his new attorney to contact him by mail about his appeal have been unsuccessful due to the refusal of "the institution" to deliver the material to him. Plaintiff alleges that his attorney mailed him certain papers, but that the institution prohibited delivery and ultimately returned them to his attorney. As a result, the plaintiff, is alleging that his constitutional rights are being violated.

On May 9, 1989, the plaintiff further alleges that he was housed in Oklahoma's Holdover Unit. He claims that he was beaten by five officers. According to the plaintiff, he requested medical attention, but claims that he never received the medical attention because the officers who had allegedly assaulted him also would have been responsible for escorting him to the medical facility.

Based on the aforementioned allegations in the Complaint, as submitted, the plaintiff "avers that the corpus delicti was established." Plaintiff, therefore, requested the following relief:

1. Plaintiff prays the immediate Court order for immediate release from said kidnappings pursuant to Habeas Corpus AD Subjiciendum and colleagues.

2. Plaintiff prays immediate Court order for criminal prosecution to all persons, parties, and/or officers subject to criminal prosecution pursuant to this Court's authority.

3. Plaintiff prays punitive damages with inclusion of all other damages and fees in the amount of $296,000,000,-000.00. Two Hundred Ninety Six Billion dollars and zero Hundredths.

4. Plaintiff prays, Etc. A Trial By a jury and pursuant to Organized Crime Control Act of 1970, Continued Criminal Enterprise.

5. Plaintiff prays all Court cost Be upon the defendant.

6. Plaintiff prays to Be allowed to proceed in forma pauperis Status. And immediate injunctive relief to be Housed in the facility in the District where he resides until his release on 3/30/91 or finality of this litigation.

7. That plaintiff be allowed to subpoena witnesses so that the best interests of justice may best be served.

8. That plaintiff be allowed to proceed in Court with this petition as He is continually suffering undue Emotional Stress and racial discrimination at hands of white Bureau of Prison officers at this institution and plaintiff has grievance procedures at this present day and date in Warden Henman's office against white officer(s) claiming K.K.K. affiliation and membership and Harassing plaintiff.

### DISCUSSION

The Complaint suffers from a number of fatal flaws. Initially, the Complaint fails to define who exactly is the intended defendant in this case. While the caption on the Complaint indicates that the United States of America is the defendant, as best as the court can determine from the Complaint, the plaintiff has failed to identify specifically which of the parties and/or institutions to which the plaintiff makes reference actually committed the alleged violations of his Constitutional rights. Although he states that he was arrested by a Special Agent of the United States Secret Service for mailing threatening letters, he also alleges that he has been in federal custody and state custody at various times and makes reference to both the federal and state authorities, at times interchangeably. He then makes reference to a District Court, without indicating whether it is a state or federal court, or in what geographic location. Plaintiff does refer to the Honorable Thom-

as G. Hull,[2] as presiding over his trial, but does not list him as a defendant and does not assert a cognizable claim against this Federal Judge. Plaintiff also appears to show a current, return address at the federal facility in Leavenworth, Kansas, but fails to provide a sufficient nexus between his allegations and the specific actions of any of the employees of that institution.

Despite this court's best efforts to read the Complaint in a light most favorable to the plaintiff in an attempt to untangle the webs spun in that Complaint, the court finds an insufficient basis for the allegations of constitutional violations under the Fifth, Fourteenth, and Eighth Amendments to the Constitution. Furthermore, this court lacks jurisdiction to entertain those claims.

The basic jurisdiction of the United States Claims Court is set forth in the Tucker Act, as codified at 28 U.S.C. § 1491 (1988); *see also United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Grav v. United States*, 886 F.2d 1305, 1307 (Fed.Cir.1989); *Meincke v. United States*, 14 Cl.Ct. 383, 385 (1988); *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 1007, 178 Ct.Cl. 599, 605 (1967). In pertinent part, section 1491(a)(1) of Title 28 of the United States Code provides as follows:

(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

---

**2.** Judge Hull has been a Federal District Court Judge in the Eastern District of Tennessee since November, 1983, and Chief Judge since November 1984.

**420**

■ However, the Tucker Act does not create any independent substantive rights enforceable against the United States for money damages. *United States v. Mitchell*, 463 U.S. at 216, 103 S.Ct. at 2967 (1983); *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Rather, the Tucker Act is only a jurisdictional statute which provides a forum for a judicial damages remedy against the United States for the violation of substantive rights in the Constitution, in Acts of Congress, in regulations of executive departments, or in express or implied contracts. To recover in the United States Claims Court, a party also must demonstrate that the basis for its substantive right to recover money damages exists in some other provision of the Constitution, Act of Congress, or executive department regulation, in which the government's sovereign immunity is specifically waived and the consent of the United States to be sued for money damages is stated. *Mitchell* 463 U.S. at 212–17, 103 S.Ct. at 2965–68.

■ Moreover, not every claim arising under federal, constitutional, statutory or regulatory law satisfies the jurisdictional requirements of the Tucker Act. *Id.* at 216, 103 S.Ct. at 2967. To confer jurisdiction in the Claims Court, the claim must arise under a provision of the Constitution, federal law, or federal regulation which mandates the payment of money damages to compensate for return of money improperly paid or taken, or to compensate for a right to be paid a sum by the federal government. *Testan*, 424 U.S. at 400, 96 S.Ct. at 954; *Mitchell*, 463 U.S. at 218, 103 S.Ct. at 2968; *Eastport Steamship Corp.*, 372 F.2d at 1007–08, 178 Ct.Cl. at 605–07. The United States Court of Appeals for the Federal Circuit has stated the test as "whether the statutes or constitutional provisions allegedly violated, require the payment of money damages for the violation." *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987), *cert. denied*, — U.S. ——, 109 S.Ct. 1318, 103 L.Ed.2d 587 (1989).

■ The due process clause of the Fifth Amendment to the Constitution, upon which the plaintiff attempts to base part of his claim, guarantees to individuals a basic standard of due process and fair treatment in dealings with the federal government. *See In re Winship*, 397 U.S. 358, 359, 90 S.Ct. 1068, 1070, 25 L.Ed.2d 368 (1970). The Fifth Amendment to the United States Constitution states as follows:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V. By its terms, the due process clause, however, does not create a cause of action for money damages against the United States. *Carruth v. United States*, 627 F.2d 1068, 1090, 224 Ct.Cl. 422, 445 (1980); *United States v. Meincke* at 386. *Noel v. United States*, 16 Cl.Ct. 166, 169 (1989); *Schmidt v. United States*, 3 Cl.Ct. 190, 194 (1983). Accordingly, this court lacks jurisdiction to grant relief for claims based on the constitutional guarantees of due process, in the Fifth Amendment to the Constitution, absent a statute which accords a plaintiff the right to claim such a monetary award. *Montego Bay Imports, Ltd. v. United States*, 10 Cl.Ct. 806, 809 (1986).

■ The plaintiff further tries to suggest that he has been denied equal protection under the law and has been subjected to racial discrimination in violation of Fourteenth Amendment to the Constitution, which provides:

All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No State shall make or enforce any law which shall abridge the privi-

leges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. While the equal protection clause by its own terms applies only to state governments, the Supreme Court has applied the same standards to the federal government under the color of the due process clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The words of the equal protection clause, however, do not create a cause of action for money damages and, therefore, this court lacks jurisdiction to grant relief for plaintiff's claims allegedly based on the constitutional guarantees of equal protection. *Muehlen v. United States*, 529 F.2d 533, 209 Ct.Cl. 690 (1976) (citing *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 178 Ct.Cl. 599 (1967); *Mack v. United States*, 635 F.2d 828, 832, 225 Ct.Cl. 187, 192 (1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981)); *Connolly v. United States*, 554 F.Supp. 1250, 1259–61, 1 Cl.Ct. 312, 321–22 (1982), modified 716 F.2d 882 (Fed.Cir.1983), *cert. denied* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984); *Rogers v. United States*, 14 Cl.Ct. 39, 49–50 (1987) aff'd 861 F.2d 729 (Fed.Cir.1988), *cert. denied* —— U.S. ——, 109 S.Ct. 1930, 104 L.Ed.2d 403 (1989) (citing *Alabama Hospital Association v. United States*, 656 F.2d 606, 609, 228 Ct.Cl. 176, 180 (1981), *cert. denied*, 456 U.S 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982) (additional citations omitted). *Walton v. United States*, 213 Ct.Cl. 755, 757 (1977).

■ In addition, plaintiff argues that his Eighth Amendment right against cruel and unusual punishment was violated when the District Court "did not issue its plaintiff's right to bail to this plaintiff for a non-violent, non-capital offense." The Eighth Amendment to the United States Constitution provides as follows:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII. While the Eighth Amendment prohibits the infliction of cruel and unusual punishment, the terms of the Eighth Amendment, do not create a cause of action for money damages against the United States. Accordingly, this court lacks the requisite jurisdictional foundation to grant relief for claims based on Eighth Amendment guarantees against cruel and unusual punishment. *Carter*, 226 Ct.Cl. 635, 636–37 (No. 476–80C 1981).

In addition, plaintiff in his Complaint tries to raise several other issues. First, plaintiff claims he was subjected to cruel and unusual punishment, when he was publicly humiliated by the District Court when it released to the Knoxville newspaper a report of the plaintiff's sentence, which then published the information. Second, plaintiff states that he has continually suffered undue emotional distress, at the hands of "white Bureau of Prison officials." The plaintiff claims that the prison officials are inflicting this emotional distress, by representing to him, their affiliation and membership in the Ku Klux Klan, as well as by harassing him. Assuming arguendo, but not acknowledging, the existence of government wrongdoing, the remedy, if any, would not be constitutional, but perhaps tortious. As such, it is well settled that this court does not have tort jurisdiction and that the plaintiff cannot bring such an action here. 28 U.S.C. § 1491 (1988); *see also Shaw v. United States*, 8 Cl.Ct. 796, 799 (1985); *Shanbaum v. United States*, 1 Cl.Ct. 177, 179 n. 3 (1982) *aff'd mem.*, 723 F.2d 69 (Fed.Cir. 1983).

In conclusion, it is clear that the plaintiff's Complaint, under the standards discussed above, fails to state a cause of action for which relief can be granted by the United States Claims Court. Because the court has been unable to completely

identify the nature of plaintiff's claims or to determine which person or party is a proper defendant, it is unable to consider whether or not to Order this case transferred to another court.

Accordingly, the court, hereby ORDERS the case be dismissed.

IT IS SO ORDERED.